CHARLES G. ALVORD, as Administrator, etc., Appellant, *v.* THE SYRACUSE SAVINGS BANK et al., Respondents.

*108 NY 510*
*114 .. 139*
*121 .. 850*
*123 .. 172*

The legislature has power to give to municipal bonds the qualities of commercial paper; it may declare innocent purchasers of such bonds, issued by the proper municipal agents, under apparent authority, to be *bona fide* holders and protected as such.

Accordingly *held*, that under the provision of the act of 1868 (§ 7, chap. 571 Laws of 1868), authorizing certain towns to issue bonds in favor of the S. N. R. R. Co., which declares that " all bonds issued by the commissioners of the several towns aforesaid, shall be valid and binding upon the towns represented by such commissioners in the hands of *bona fide* holders," the title of an innocent purchaser of bonds, issued by a town commissioner after filing of the evidence required by the act (§ 1) showing the requisite consent of tax payers, could not be questioned, at least that an action

under the act of 1872 (Chap. 161, Laws of 1872, re-enacted Code of Civ. Pro., § 1925), could not be maintained by tax payers of the town against such a holder to compel a cancellation of the bonds, on the ground that the requisite consents were not in fact obtained.

*Cagwin* v. *Town of Hancock* (84 N. Y. 532, 537), *Craig* v. *Town of Andes* (93 id. 405), distinguished.

It appeared in such an action that the bonds had been issued and the interest paid annually by the town for more than ten years; that the railroad was constructed and put in operation on the line stipulated. *Held*, that the case was not one authorizing a court of equity to cancel the bonds.

The "board of town officers" to whom authority is given by said act (§ 1) to appoint the commissioner, refers to the board composed of town officers authorized to audit town accounts, commonly designated as "the town board."

(Argued March 11, 1885; decided April 14, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made October 7, 1884, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term. (Reported below, 34 Hun, 143.)

The nature of the action and the material facts are stated in the opinion.

*Cornelius E. Stephens* for appellant. The statute of limitations is not a bar. (Laws of 1872, chap. 161, re-enacted in the Code of Civil Procedure, § 1925; *Venice* v. *Breed,* 62 N. Y. 471; *Town of Venice* v. *Woodruff,* id. 462; *Miner* v. *Beekman,* 50 id. 338; *Hubbell* v. *Medbury,* 53 id. 99; *Arnold* v. *H. R. R. Co.,* 55 id. 661; *Metzer* v. *A. & A. R. R. Co.,* 79 id. 171; *Morse* v. *Gould,* 11 id. 281; *Waltermier* v. *Westover,* 14 id. 16; *Sullivan* v. *Brewster,* 1 E. D. Smith, 681; *Miller* v. *Moore,* id. 739; *McLaren* v. *Pennington,* 1 Paige, 502; *Bertholf* v. *O'Reilly,* 84 N. Y. 509; *Butterfield* v. *Rudd,* 58 id. 479; *Ryan* v. *Waule,* 63 id. 57.) The plaintiff had the right to maintain this action under the statute of 1872 and the Code of Civil Procedure, § 1925. (*Metzer* v. *A. & A. R. R. Co.,* 79 N. Y. 171; *Ayers* v. *Lawrence,* 59 id. 192; *Hurlburt*

v. *Banks,* 1 Abb. N. C. 161; *Hills* v. *P. Savings Bank,* 26
Hun, 161.)    The consents for bonding the town of Salina were
void, because they were all upon conditions as to location of
route.    (*Craig* v. *Town of Andes,* 93 N. Y. 405; *Butternuts
and Oxford Turnpike Co.* v. *North,* 1 Hill, 518; *Ft. E. &
Ft. M. P. R. Co.* v. *Payne,* 15 N. Y. 583; *T. & B. R. R.
Co.* v. *Tibbitts,* 18 Barb. 298; *People, ex rel. Averill,* v.
*Adirondack Co.,* 57 id. 656.)    The statute (Chap. 571, Laws of
1868) is void, for uncertainty, and is incapable of execution.
(19 Wall. [U. S.] 132; *Weatherhead* v. *Baskerville,* 11 How.
[U. S.] 329; 9 Humph. 272; *Collins* v. *Hope,* 20 Ohio, 492;
*Mitchell* v. *Mitchell,* 6 Md. 224.)    The consents are not
authenticated as required by law and furnished no authority to
the commissioner to suscribe for the stock or to issue the bonds.
(*People, ex rel. Spencer,* 55 N. Y. 1; *People, ex rel. Allen* v.
*Knowles,* 47 id. 419.)    There can be no *bona fide* holders of bonds
issued without authority of law. (1 Kent's Com. 462; *People* v.
*Draper,* 15 N. Y. 532; Potter's Dwarris on Statutes, 118;
*Matter of N. Y. & B. B. Co.,* 72 N. Y. 527; *Matter of
Second Ave. M. E. Church,* 66 id. 395.)    There is no ground
for exempting persons purchasing bonds in ignorance of juris-
dictional defects from the effect of the resulting invalidity.
(*People* v. *Hurlburt,* 59 Barb. 446; *Taylor* v. *Porter,* 4 Hill,
144; *Culver* v. *Ft. Edward,* 8 Hun, 390; *People* v. *Barrett,*
18 id. 206; *Horton* v. *Town of Thompson,* 71 N. Y. 513;
*Cagwin* v. *Town of Hancock,* 84 id. 536; 76 id. 182; *Maas*
v. *M. K. & T. R. W. Co.,* 83 id. 223; 75 id. 400; 23 id. 457;
45 id. 772; 46 id. 110; 55 id. 1, 135; 70 id. 28; 74 id.
185; 4 Lans. 528; 5 id. 89.)    Bonds issued without complying
with conditions precedent are wholly void wherever found.
*Bona fides* cannot be predicated of such bonds.    (Jones on
Mun., §§ 223, 226, 230, 297, 299; *Marsh* v. *Fulton,* 10
Wall. 676; *Humbolt* v. *Long,* 92 U. S. 642; *McClure* v. *Ox-
ford,* 94 id. 429; *Oakland* v. *Zabriskie,* 101 id. 601;
*Anthony* v. *Jasper Co.,* id. 693; *Cagwin* v. *Hancock,* 84 N.
Y. 532; *S. Ottawa* v. *Perkins,* 94 U. S. 260; *Loan Assn.* v.
*Topeka,* 20 Wall. 655; *Wilson* v. *Town of Caneadea,* 22 Hun,

218; *Starin* v. *Genoa*, 23 N. Y. 439; *Gould* v. *Sterling,* id. 456; *People* v. *Mead*, 24 id. 114.) The statute is unconstitutional and void, because it does not provide for a hearing before any court, officer or tribunal. (1 Kent's Com. 623; 3 Story's Com. on Const. 264, 661; Smith on Stat. and Const. Construction, 447; *Embury* v. *Connor*, 3 N. Y. 511; *Varrick* v. *Smith*, 5 Paige, 159; *Matter of Albany Street*, 11 Wend. 149; *Bloodgood* v. *M. & H. R. R. Co.*, 18 id. 56; *Westervelt* v. *Gregg*, 12 N. Y. 212; *Stuart* v. *Palmer*, 74 id. 183; *People* v. *Batchelor*, 53 id. 73; *Weismer* v. *Village of Douglass*, 64 id. 91; *Matter of Deansville Cemetery, etc.*, 66 id. 569.) Due process of law means the process of law in common use and provided for by statute before the adoption of the Constitution of 1846. (*Rockwell* v. *Nearing*, 35 N. Y. 302; *People* v. *Haines*, 49 id. 587; *Hartwell* v. *Armstrong*, 19 Barb. 166.)

*George F. Comstock* for respondents. A suit of this nature cannot be maintained by a tax payer in the absence of some enabling statute, giving to him the right or capacity to sue. (*Doolittle* v. *Broome Co.*, 18 N. Y. 158; *Roosevelt* v. *Draper*, 23 id. 318; *Lorrillard* v. *Monroe*, 11 id. 392; *Phelps* v. *Watertown*, 61 Barb. 121.) This action could not in equity be maintained. (2 Story's Eq. Jur., § 293; *Calhoun* v. *Supervisors, etc.*, 28 Hun, 380, 395–9, 415; *Craig* v. *Town of Andes*, 93 N. Y. 405; 1 Dill. on Mun. Corp. [3d ed.], § 548; *Society, etc.* v. *City of New London*, 29 Conn. 194; *Town of Potter*, 8 Blatchf. 165.) Equity will not entertain a bill to remove a cloud upon title, or to cancel an instrument *quia timet* when it appears that the deed or mortgage supposed to create an obligation is void on its face, or void by evidence not exposed to destruction or loss, and always available as a legal defense. (*Town of Venice* v. *Woodruff*, 62 N. Y. 462; Story's Eq., § 700; *Haywood* v. *Buffalo*, 14 N. Y. 534.) As the town officers may propose or threaten to pay an illegal and void bond or debt of any kind, and inasmuch as this has been held to be a threatened waste, the statute does give to the tax payer the

right of suit to prevent the issuing or even the payment of the debt as a waste of the corporate property or assets. (*Lawrence* v. *Ayers*, 59 N. Y. 192.) The constitutionality of the Railroad Bonding Acts is not open for consideration. (*Rogers* v. *Stevens*, 86 N. Y. 623; *People* v. *Mayor*, etc., 4 id. 419; *Duanesburgh* v. *Jenkins*, 57 N. Y. 177; *Williams* v. *Duanesburgh*, 66 id. 129.) The statute of limitations in equity begins to run, as at law, as soon as the party has a right to apply to the proper tribunal for relief. (*Bruce* v. *Tilson*, 25 N. Y. 144; *Peters* v. *Delaplaine*, 49 id. 363.)

FINCH, J. This case has in it several peculiar and exceptional elements, strong enough to exercise a determining influence upon its result. The action is in equity, and seeks the cancellation of certain municipal bonds in the hands of innocent holders, after the town, for more than ten years, had steadily paid the accruing interest without question or protest, and so had given to the securities credit, and disarmed suspicion, and created confidence on the part of investors. The action is not brought by the town, but by two of its tax payers, founding their right to be heard upon the act of 1872 (Chap. 161), re-enacted in the Code (§ 1925), which authorizes the tax payer to maintain an action against any officer or agent of a town to prevent waste of its corporate property; and is prosecuted upon an appeal to which the railroad commissioner of the town, originally joined as a defendant, is not a party. It is brought after the railroad sought to be aided has been constructed and put in operation upon the line originally stipulated, and when the town and its residents have received the precise and full and agreed compensation for which the bonds were issued. It sets up defects, most of which are available at law, and aims to justify a resort to equity upon the ground that the bonds operated as a mortgage upon the tax payer's property, and clouded his title. And it is sought to be maintained against innocent holders of the securities in the face of an express provision of the act constituting the statutory authority, which declared (§ 7) that " all bonds issued by the commissioner of

the several towns aforesaid shall be valid and binding upon the towns represented by such commissioners in the hands of *bona fide* holders or owners.thereof, and in case of any error, fraud or willful violation of duty on the part of any commissioner in the issue of such bonds, the town which he represents shall have redress upon his official bond to the extent provided therein ; but no commissioner shall be held personally liable where he shall act in good faith in the discharge of his official duties."

Many interesting questions were argued at the bar which we do not consider because we rest our conclusion mainly upon the force and effect of the section just quoted in its connection with the other provisions defining the authority of the commissioner to issue the bonds of the town.

While this court has never given to such securities, completely and without reserve, the characteristics of commercial paper, and has especially denied to them that element which furnishes protection to the *bona fide* holder where authority is apparent but not real, (*Gould* v. *Town of Sterling*, 23 N. Y. 462), and does not in that respect change its position, it fully recognizes the right of the legislature, by direct enactment, to impose these characteristics, without exception, upon such municipal bonds as it may choose, and bring them within the rules of protection devised for the safety of innocent holders. We have denied that there could be *bona fide* holders of town bonds issued without actual authority, (*Cagwin* v. *Town of Hancock*, 84 N. Y. 532), and this for the reason that the purchaser dealing with one acting as agent for the town whose authority was written out upon the statute was bound to know, and had the means of knowing, the real existence of that authority, and could not act in good faith if he shut his eyes to the truth. But here we have a class of municipal bonds as to which the legislature has declared that there can be *bona fide* holders, and as against them all bonds issued by the commissioner shall be valid. We must respect the mandate. To do so and give it the least operative force, we must concede that here are bonds in the purchase of which an apparent authority, which one act-

ing in good faith might take to be real, protects the innocent holder as effectually as if the real authority existed; for unless he may rely upon the evidence which the statute directs to be given, and take it as true, without obligation to investigate its truth or responsibility for its falsehood, his condition is no better than that of an original party to the transaction, or of one purchasing with full knowledge of the want of authority. Only by such construction of the act of 1868, taking the provision as to *bona fide* holders as the key to the legislative intent, can we obey the mandate of the law.

The authority to issue the bonds of the town of Salina provided, (Laws of 1868, chap. 571), that upon the application of twelve freeholders and residents of the town, "the board of town officers" should appoint a commissioner to subscribe in the corporate name of the town to the capital stock of a specified railroad company, and issue bonds for the payment thereof. It made the power to issue such bonds depend upon the consent in writing of a majority of the tax payers in number and amount appearing upon the assessment-roll of such town for the year 1867. It required that consent to be proved or acknowledged in the same manner as signatures to conveyances of real estate, and to be filed and recorded in the clerk's office of the county; and that the " fact that a majority of the tax payers have so consented shall be proved by the affidavit of one of the assessors of such town, indorsed upon or annexed to such consent in writing, and filed and recorded with such consent in the office of the county clerk of the county where such assessor resides; and the original consent and affidavit, or a copy thereof certified by the clerk of the county in whose office it is required to be filed, shall be legal evidence of the facts contained therein, and shall be admitted as such in any court of this State, and before any judge or justice thereof." The statute adds, that whenever " the consent in writing aforesaid shall have been filed in the proper county the commissioner shall make the subscription and issue the bonds."

In the present case a written application of twelve freeholders was made to the town board, and thereupon a commissioner was

appointed. That he was duly and lawfully appointed and authorized to act as such under the provisions of the law is beyond any reasonable doubt. The form of the application is in no respect dictated by the statute, and that adopted in this case was sufficient to set in motion the machinery provided by the law. That it might have been more specific and more ample in its details detracts nothing from its sufficiency. It was addressed to the board of town officers of the town of Salina; it was signed by twelve freeholders and residents who declared themselves to be such, the truth of their statements remaining unchallenged; and it requested the appointment of a commissioner to carry into effect for the town the provisions of the statute, identifying it by its title and the date of its passage. Nothing more was requisite to its designated office, that of setting in motion the appointing tribunal. Such tribunal is denominated in the act "the board of town officers." It is now said that the designation was ambiguous, and for that reason the efficacy of the law must fail. But there is no difficulty in identifying the tribunal. Under the provisions of law certain officers of the town, occupying different positions and having no common designation, meet together and act together as a board, representing the town in auditing claims against it, and are hence commonly denominated "the town board." It is suggested that assessors meet together and act in combination, but if they had been intended, the natural language would have been "the board of town assessors." It would be a misnomer to speak of them as "*the* board of town officers." That phrase plainly refers to a known assemblage of persons holding different offices in the town, but, under the law, meeting as one body to perform official duties; and to that body the written application was presented, and by such board of town officers the appointment was made. So far, the criticism upon even the regularity of the proceedings has no adequate foundation.

But the next step in the process is of much greater importance. At this point we have a sufficient enabling statute, a commissioner duly appointed and authorized to act under it, but are confronted with a condition precedent, the existence of

which lies at the basis of his authority, and in the absence of which he is in fact powerless to issue the bonds of the town. That condition is that a majority of the tax payers in number and amount shall have consented to the issue of the bonds for the purposes authorized, and we here meet the inquiry whether as against these defendants the existence of that essential condition was established. The proof shows that there appeared upon the records of the proper clerk's office what purported to be the written consent of a majority in number of the tax payers represented upon the assessment-roll of 1867 as owning a majority in amount of the taxable property of the town. The signatures appended were proved by the affidavits of subscribing witnesses annexed to the consents, who swore that they were such and signed as such, and verified the signatures of the tax payers. This written consent, thus verified, upon its face appeared to answer the requirements of the statute and to constitute a performance of the condition precedent required by the act. But there were two things about it which are pressed upon our consideration, both of which would become of vital importance if this was an action at law by the bondholder against the town, and if the provision of section 7 for the protection of innocent owners was absent. While the consents filed asserted their own sufficiency, the absence of the tax-roll of 1867 from the record made comparison with it impossible, except by one going outside of the record and pursuing an inquiry into the extrinsic facts ; and it is claimed that upon such inquiry the actual truth will prove to be that the needed majority did not consent. It is further said that the consents were ineffectual because of the words attached to some, as follows, viz. : " It is understood that. this consent shall be inoperative unless the railroad proposed to be constructed shall be laid through said town ; " and because of the same words attached to others, with the additional phrase " and corporate limits of the village of Liverpool." Upon the one point we are referred to the case of *Cagwin* v. *Town of Hancock* (*supra*), and upon the other to *Craig* v. *Town of Andes,* (93 N. Y. 405). Neither case reaches or purports to reach an

action in equity, such as is here sought to be maintained, and neither dealt with or recognized any possible right of a *bona fide* holder of town bonds, which the statute before us contemplates and secures. We have thus reached the question whether, as against the defendants, the needed fact of consent was to be deemed established by the record introduced. Our construction of the act of 1868, already stated, requires us to so hold, and to assimilate the case to that of ordinary commercial paper, applying the decisions of our own and of other courts which have established the rule in such cases. Thus in *Farmers and Mechanics' Bank* v. *Butchers and Drovers' Bank* (16 N. Y. 125), the general doctrine was stated to be that "where the party dealing with an agent has ascertained that the act of the agent corresponds in every particular, in regard to which such party has or is presumed to have knowledge, with the terms of the power, he may take the representation of the agent as to any extrinsic fact which rests peculiarly in the knowledge of the agent, and which cannot be ascertained by a comparison of the power with the act done under it." The rule was tersely stated in *North River Bank* v. *Aymar*, (3 Hill, 270), that as to persons dealing in good faith with the agent, they are not bound to inquire into facts *aliunde*, and "the apparent authority is the real authority." Our construction of the exceptional statute in the present case places the bonds issued by the town of Salina upon the same footing as other municipal bonds in the decisions of the Federal court, and makes applicable the reasoning and authority of those decisions. Admitting that there may be innocent holders, and conceding their right to protection in that character, those decisions declare it a settled rule of law that, where a particular functionary is clothed with the duty of deciding such a question as whether the necessary number of tax payers have consented to the bonding, his determination, in the absence of fraud or collusion, is final. (*Lynde* v. *The County*, 16 Wall. 13; *Township of Rock Creek* v. *Strong*, 96 U. S. 271; *County of Warren* v. *Marcy*, 97 id. 96.) If some cases seemed to go even further than that, and make

the agent's assertion in the bonds of existing authority sufficient to establish necessary conditions as against innocent holders, the rule is now limited to the instances in which the officer issuing the bonds is also the officer intrusted with the determination of the precedent fact, in which case his recital is a decision. (*Town of Coloma* v. *Eaves*, 92 U. S. 484; *Northern Bank* v. *Porter Township*, 110 id. 608.) It follows, therefore, under the peculiar provisions of the statute governing the present case, that the purchasers for value of the bonds of the town of Salina had a right to rest upon the determination of the assessor and the act of the commissioner, and were not bound to go behind them. We have said in the ordinary class of cases that the assessor's affidavit was not conclusive, and operated only as *prima facie* proof, because the statutes governing those cases did not make it conclusive. But the present 'statute has that resultant effect, or else its provisions are illusory. Under its second section the commissioner was authorized to issue the bonds " whenever the consent in writing aforesaid of the tax payers of any town in the said counties shall have been filed in the proper county." His right to act depended, not upon an investigation by him of a questionable fact, but upon the record evidence of that fact furnished by the filing of consents which might be sufficient and were proved to be so by the annexed affidavit of the assessor as against innocent purchasers claiming under his act. Unless this is the effect of that provision coupled with the express mandate of section 7 that " all bonds " issued by the commissioner shall be valid in the hands of *bona fide* holders, its peculiar provisions are meaningless, and must be rejected as beyond the power of the legislature. It is thus immaterial what the fact was back of the assessor's affidavit. Whether he counted correctly or incorrectly, whether he accepted as sufficient consents which were insufficient, or committed any error or mistake is of no consequence to the innocent holder for value, who was entitled, by force of· the statute itself, to rely upon the apparent authority as if it were in truth real and perfect.

When to this necessary construction of the act it is added

that the plaintiffs are applying to a court of equity where inexcusable *laches* is always a reason in its discretion for withholding its aid, after they have slept upon their rights for ten years, after failing to prevent or enjoin the issue of the bonds, after twenty-one interest coupons have been paid without murmur or dissent, and after the proceeds have been fairly expended upon the very road intended and the expected benefits have been realized, it becomes very clear that the case is not one in which a court of equity should exert its extraordinary power to cancel the bonds issued by the town in the hands of innocent holders whom the statute professed and intended to sedulously protect.

The constitutionality of such bonding acts as that before us is not an open question in this court.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.