Chief Judge Breitel.
Plaintiff, as a taxpayer, seeks a declaratory judgment that some unspecified portion of State tax and revenue anticipation notes issued in the aggregate amount of $3.72 billion in the spring months of 1976 was, as a matter of law under the State Constitution, void. He seeks too an injunction barring the State from issuing further tax and revenue anticipation notes until it achieves a "balanced budget”. At stake, therefore, is also the prospective issuance by the State of almost $4 billion of similar notes in the spring 1977 financing of the State budget plan for fiscal year 1977-1978, which financing starts on the heels of the decision by this court.
The complaint stands dismissed on summary judgment under CPLR 3212. The Appellate Division by a divided vote affirmed the dismissal at Special Term.
The critical question is whether, with respect to the State’s 1976-1977 fiscal year, there were issued anticipation notes by the State’s officials with knowledge, actual or constructive, that there was no authentic balance between expenditures and moneys from all sources in the State’s budget plan. If so, there was no constitutional authority to issue the anticipation notes (NY Const, art VII, § 9). There are subsidiary questions: upon whom falls the burden of proof to establish that there is, or is not, the balanced budget required by the Constitution (art VII, §2; Wein v State of New York, 39 NY2d 136, 141-142), and whether that burden of proof has been sustained. There are also peripheral questions with respect to plaintiff’s standing as a taxpayer to raise the questions, the State’s sovereign immunity from suit without its consent, the validity of notes issued in violation of the Constitution, and the enforceability of such notes in the hands of bona fide holders for value without notice of defects.
Before considering the ultimate merits of the appeal, the peripheral questions, because they are of recurring prime significance, must be treated.
Plaintiff has standing and State officials such as defendants, at least in the case of the Comptroller, possess none of the sovereign immunity of the State. None may read the majority opinion in Boryszewski v Brydges (37 NY2d 361, 362-364) without concluding that a citizen or taxpayer has the right to *501 challenge in the courts, as unconstitutional, acts of government—"the classical means for effective scrutiny of legislative and executive action” (p 364). The right of a taxpayer or citizen to sue has since been recognized by the Legislature (State Finance Law, art 7-A [as added by L 1975, ch 827]). This is not to say that there may or may not be limits. It is enough that this appeal does not exceed possible limits and follows naturally in the wake of Wein v State of New York (39 NY2d 136, supra), a case upon which all the parties rely.
On the showing in this case, even if the anticipation notes had been issued in violation of the Constitution and are therefore invalid and unenforceable between the issuer and purchasers who took with notice or without value, purchasers in good faith for value would not necessarily be without remedy. There is patent authority in the Constitution and the statutes to issue them upon the findings and certifications of the appropriate authorities (NY Const, art VII, § 9; State Finance Law, § 55).
Bonds and notes issued by the State and its municipal subdivisions, at least when there is explicit constitutional authority, are prima facie invulnerable and the investor may rely on such patent authority (cf. Citizens’ Sav. Bank v Town of Greenburgh, 173 NY 215, 222-226; Van Dolsen v Board of Educ., 162 NY 446, 451-452; Hoag v Town of Greenwich, 133 NY 152, 163; Brownell v Town of Greenwich, 114 NY 518, 528-529; Town of Solon v Williamsburgh Sav. Bank, 114 NY 122, 133-134, 137-139; Cagwin v Town of Hancock, 84 NY 532, 541-542; but cf. Alvord v Syracuse Sav. Bank, 98 NY 599, 604; see, generally, 64 Am Jur 2d, Public Securities and Obligations, §§ 308-323, and cases cited, indicating that a distinction must be made between lack of patent authority to issue securites, by reason of which securites may be wholly void, and latent infirmities, such as lack of underlying preconditions, whether of substance or form, which may render public securities subject only to remedies not enforceable against bona fide holders for value; see, also, Uniform Commercial Code, § 8-202, subd [2], including Official Comments, esp Comment 6, which, because subject to constitutional limitations, is not determinative but is, nevertheless, instructive).
On this last view, the complaint in seeking without qualification a declaration of "voidness” of the anticipation notes may not be sustained. When the alleged infirmities, as here, relate to procedures, findings, accounts, and nonpublicized *502 documents, never readily available to investors, security analysts, and financial institutions, the purchasers of the governmental obligations may rely on the patent, meaning explicit, authority of the issuers to do as they have done.
The principle last discussed rests not only in reason but in necessity. Otherwise, even long-term public bonds, issued directly by the State or governmental entities apparently by express authority of the Constitution, would always, until payment, or even afterward, remain vulnerable to constitutional attack. Vulnerability of that sort would make bonds speculative rather than the prime investment securities they are, issuable at comparatively low rates of interest. The Legislature has recognized this concern (State Finance Law, § 123-b, subd 1, which statute, of course, is also subject to constitutional limitations).
The ultimate issues on this appeal are of a different order and quite easily and definitively resolved. This case is a sequel to the Wein case (supra), in the opinions of which the background and relevant constitutional issues implicated in State finance, and particularly the mechanisms involved in the use of anticipation notes, are detailed. Reference is made to those opinions in order to keep the compass of the present discussion reasonably limited.
In the spring of 1976 the State by action of the Governor and the Legislature adopted a purportedly balanced budget plan, implemented by statutes providing for revenue raised by taxes to supplement other revenues and moneys, and appropriations for the operation of the State government, including various forms of local assistance. The budget plan as implemented balanced at $10.9 billion (Exhibit D, Official Statement of April 15, 1976, p 22). Included in the plan was provision for the redemption of anticipation notes, shortly to mature, in the sum of $382 million, the product of a deficit resulting from the 1975-1976 fiscal year. As required by the Constitution and the State Finance Law these deficit notes were to be and were paid in the 1976-1977 fiscal year from certain revenues impounded by the Comptroller (NY Const, art VII, § 9; State Finance Law, § 55, subd 1, par [b]).
Plaintiff emphasizes that the $382 million deficit was then but the last of a series of deficits which the State had experienced successively during prior years.
In the budget plan for 1977-1978, there is a "new” remainder of deficit anticipation notes from the 1976-1977 fiscal year *503 in the sum of $158 million. These too are to be paid out of certain revenues impounded by the Comptroller.
Beyond the amounts of deficit anticipation notes running over from one fiscal year to another, the State in each of the last two fiscal years has experienced a deficit in the once balanced budget plans of revenues and expenditures. Either revenues have fallen short of the budget estimates or expenditures have exceeded those contained in the budget estimates, or both have occurred.
On the basis of these facts of the past and present, plaintiff urges that the State has failed in its constitutional obligation to provide for a balanced budget, and that therefore the recurring issuance of anticipation notes in successive years is in violation of the Constitution. He relies on the holding in Wein v State of New York (39 NY2d 136, supra) that "if repayment of tax and revenue anticipation notes may only be made by creating, directly or indirectly, a budgetary deficit in the year of repayment, such borrowing is not an anticipation of the receipt of taxes and revenues and thus violates constitutional limitations” (p 149). He relies further on the repeated admonition in the Wein case that in order for a budget to be balanced, the estimates of revenues and expenditures must be "authentic” (id., pp 148, 149).
His syllogism is simple but mistaken. It is, in effect, that a planned deficit is unconstitutional (which it is); that two successive annual deficits occurred (which is true); and, therefore, that there must have been a planned deficit (which results in a classic example of the fallacy of the undistributed middle term). On the basis of this disjointed syllogism, he argues, therefore, that the anticipation notes of 1976-1977 were invalid, and, to make matters worse, by implication and necessary consequence from the relief he seeks, that the plan to issue more anticipation notes in 1977-1978 would be an ill-disguised "rollover” or unconstitutional refinancing of a planned deficit.
To support his flawed syllogism plaintiff quotes an inner quotation from the Wein case: "As was stated by the 1938 Subcommittee on Taxation and Finance of the Constitutional Convention Committee: 'The spirit of the clause implied that the State must not have two or more budgetary deficits in succession’ ” (39 NY2d 136, 149, supra). The context in which the inner quotation appears makes clear that the reference is to two planned deficits in succession. In common sense it could *504 not have meant otherwise. Note too that this is a quotation from a subcommittee of a committee for the planning of the convention, and not a dictum considered and voted by the convention.
The fact is that there may be an indefinite series of deficits honestly suffered. All that is necessary to produce the result are successive years of unpredictable shortfalls in revenues or rises in required spending beyond estimates. Depressed economic conditions can affect both sides of the balance. Catastrophies, emergencies, or, in smaller scale, significant needs may arise, which, if unanticipated, may upset the balance on one side or the other. Indeed, it is unattainable for any budget plan, perfectly and honestly balanced in advance, to remain in balance to the end of the fiscal year. There must, as a practical matter, in every year be either a deficit or a surplus. Nothing in the Wein case (supra) suggests otherwise.
It is only when the estimates are dishonest that fault may be found with the budget plan or that which is done pursuant to it. It is then that the use of anticipation notes to balance the imbalanced budget plan is an unconstitutional practice.
To prove that the budget plans of the successive years were truly imbalanced, plaintiff points to the Governor’s Annual Message to the Legislature on January 5, 1977 that "It is among the abuses of prior years that the purposes of full faith and credit bonds were distorted with their proceeds used to finance general fund deficits”. Assuming that to be true, and even assuming that in past years there was an invalid refinancing or "rollover” of anticipated deficits by temporary notes in violation of the Constitution, it does not follow that a current budget plan, whether that current for 1976-1977 or 1977-1978, is in violation of the Constitution. For, even an invalid issuance of anticipation notes must be paid, as indicated earlier, and if provision is made for such payment in a balanced budget that last budget plan is both good and valid.
As a consequence, one making an attack, as plaintiff does in this case, cannot prevail merely by showing successive deficits or that provisions have been made for successive series of deficit anticipation notes.
The proof of improper budget manipulation must be found in the estimates of revenues and expenditures. At this point, plaintiff argues that, once given the successive deficits, the State should have the burden of proof as to the authenticity of the estimates. Assuming it were feasible to convert a court *505 room into a super-auditing office to receive and criticize the budget estimates of a State with an $11 billion budget, the idea is not only a practical monstrosity but would duplicate exactly what the Legislature and the Governor do together, in harmony or in conflict, most often in conflict, for several months of each year.
The justification of the budget plan before the Legislature and its fiscal committees is the responsibility of the Governor for the executive branch, and of judicial representatives for the judicial branch. That is the constitutional process, and indeed the only practical one. Consequently, it would be ludicrous to deny prima facie validity to this constitutionally mandated and meticulously directed process (NY Const, art VII, §§ 1-4).
The burden of proof, therefore, is on one who attacks the budget plan. It is a formidable burden in any event and, realistically, impossible as to some categories of estimates. But there are some estimates that could be demonstrated on their face to be unreasonable. An extreme example would be a tripling of the estimates of personal income tax revenue, without a change in the tax rate, in a period in which the economy appears to be on a plateau or in decline. Another would be an estimate of expenditures falling short of statute-mandated expenses or constitutionally directed covering of maturing indebtedness. Still another would be an omission of estimated expenditures for judgments rendered in courts of law. There are many other possible examples.
That the task is not an easy one is no reason to alter the allocation of the burden of proof. The reverse would be much worse of an evil—the occasionally irresponsible attack on a budget plan requiring enormous expenditures of time and money in the wrong forum to resolve the issue.
None of the foregoing should be read to permit judicial review of a State budget plan directly. There is no such power (cf. New York Public Interest Research Group v Steingut, 40 NY2d 250, 257). Judicial intervention may be invoked only in the narrowest of instances. The issue in this case, like the issue in the Wein case (supra), is one such instance, namely, where the validity of indebtedness determinable only by reference to the budget plan requires such intervention in order to resolve the constitutional question.
On this analysis, it is evident that plaintiff’s ambitious venture may not succeed. The shortcut, based, in the first *506 instance, on a logical fallacy, and the attempted misplacement of the burden of proof demonstrate the summary judgment was justified. No issue of fact is presented requiring a trial. That does not mean that, in truth, all is as it should be, but only that there has been no showing that it may not be as it should be.
Consequently, beyond the prayer for a declaration that the 1976-1977 anticipation notes or some portion of them are void, plaintiff has not established the right to injunctive relief.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.