THE PEOPLE ex rel. MICHAEL COUGHLIN, Respondent, *v.* PATRICK J. GLEASON, as Mayor, etc., Appellant.

Where a municipal charter provides that contracts for work shall be let to the lowest responsible bidders, the officials authorized to let a contract may not arbitrarily reject the lowest bid and accept a higher, without any facts justifying it; there must be some facts tending to show that the lower bidder was not responsible, or at least some pretence to that effect.

The charter of Long Island City (Chap. 461, Laws of 1871) provides that all work done involving an expenditure of more than $100, shall be by contract, let "to the lowest responsible bidder giving adequate security." In proceedings by mandamus to compel the mayor of the city to draw his warrant on the city treasurer for an amount audited by the common council, it appeared that there were seven bidders for the contract; five of the bids were lower than that of relator. The resolution of the common council awarding the contract was vetoed by the mayor on the ground that the relator's bid was higher than "that of another responsible party." It was then passed over the veto. There was no question or objection at any time that the lower bids were not formal and regular and made by responsible parties. *Held,* that the contract was illegal and void; that the relator could not recover for the work and was not entitled to a writ; that nothing was added to the legality of relator's claim by the audit and allowance thereof by the common council, as that body had no jurisdiction so to do.

*E. R. G. L. Co.* v. *Donnelly* (93 N Y. 557), distinguished.

(Argued June 18, 1890; decided June 24, 1890.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made February 11, 1889, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus, directed to defend-

ant as mayor of Long Island City, commanding him to issue his warrant to the relator as prescribed.

The facts, so far as material, are stated in the opinion.

*George W. Stephens* for appellant. The relator was not the lowest bidder, and his contract was, therefore, void. (Charter Laws of 1871, 985, § 29; *Appleby* v. *Mayor, etc.*, 15 How. Pr. 423; *McDonald* v. *Mayor, etc.*, 68 N. Y. 23; *Reilly* v. *Mayor, etc.*, 7 N. Y. S. R. 61; *Brady* v. *Mayor, etc.*, 20 N. Y. 312; 7 Abb. Pr. 234; *Dickinson* v. *Poughkeepsie*, 75 N. Y. 65; 7 Hun, 1.) If the claim was illegal it was not within the power of the common council by a pretended audit to legalize it. (*Lyddy* v. *L. I. City*, 104 N. Y. 218; *People* v. *Stout*, 4 Abb. Pr. 22.) The resolution awarding the contract to the relator never became legally operative, for the reason that the veto of it by the mayor was not overruled. (Laws of 1871, 902, § 5; *Peck* v. *City of Rochester*, 18 N. Y. S. R. 244.) Conceding the validity of the contract, one-half of the relator's claim is invalid, because it is for services before the contract was made. (Brown on Stat. of Frauds, § 291; *McAleer* v. *Corning*, 18 J. & S. 63; *Vaughn* v. *De Wandler*, 63 How. Pr. 378, 381.) The relator's remedy is by action, not by mandamus. (*Clark* v. *Miller*, 54 N. Y. 528; *People ex rel.* v. *Thompson*, 25 Barb. 73; *People ex rel.* v. *Campbell* 72 N. Y. 496; *People ex rel.* v. *Hawkins*, 46 id. 9; *People ex rel.* v. *Insp. of Schools*, 44 How. Pr. 322.)

*A. T. Payne* for respondent. The common council in the exercise of its power and discretion lawfully awarded the contract to the relator. (Laws of 1871, chap. 461, § 29; *E. R. G. Co.* v. *Donnelly*, 93 N. Y. 557.) The common council, representing the city (§ 1, chap. 1, tit. 3 of the charter), audited and allowed the installment due upon the contract (page 9), and such action was conclusive (§§ 12 and 13, chap. 1, tit. 3 of the charter.)

EARL, J. On the 21st day of February, 1888, the common council of Long Island City passed a resolution directing the commissioner of public works to advertise for proposals for

cleaning the streets, etc.; of the first ward of the city for the
term of one year.  Pursuant to this resolution the commissioner
advertised for bids for the work, and there were five bids, of
which the relator's was for $2,575, the highest but one, and
$725 higher than the lowest.  On the twenty-second day of
June the common council, composed of seven members, adopted
a resolution directing the mayor and commissioner of public
works to enter into contract with the relator for the work at
his bid.  The resolution was vetoed by the mayor in very plain
and vigorous language on the ground that the relator's bid
was higher than " that of another perfectly responsible party."
Subsequently the common council passed the resolution unan-
imously over the veto, and yet the mayor refused to enter into
the contract with the relator.  Then the common council,
upon the application of the relator, adopted a resolution
directing the city clerk to sign the contract on behalf of the
city, and it was so signed.  Subsequently the relator presented
a claim to the common council for work under his contract for
the month of July, 1888, and it, by resolution, audited and
allowed the claim as presented.  The mayor vetoed that reso-
lution on the ground that the work had not been let to the
lowest responsible bidder, and hence that the contract and
work thereunder were unauthorized; and he stated in his veto
message that he and the commissioner of public works had
notified the relator that they " could not legally recognize him
or permit him to perform the work or enter into any contract
with him for the performance of the same."  Thereafter,
because the mayor would not draw a warrant upon the city
treasurer for the sum so audited and allowed, the relator pro-
cured an order at a Special Term of the Supreme Court direct-
ing a peremptory writ of mandamus to issue commanding the
mayor forthwith to execute and deliver the warrant to the
relator, and that order having been affirmed at the General
Term, the mayor has appealed to this court.

It is provided in the charter of the city (Chap. 461, Laws of
1871), " that all work to be done and all supplies to be fur-
nished for the corporation involving an expenditure of more

**634**     People ex rel. Coughlin *v.* Gleason.     [June,

Opinion of the Court, per Earl, J.

than $100, shall be by contract founded on sealed bids, or on proposals made in compliance with public notice for the full term of ten days, and all such contracts, when given, shall be given to the lowest responsible bidder giving adequate security." This provision was inserted in the charter undoubtedly to prevent favoritism, corruption, extravagance and improvidence in the procurement of work and supplies for the city, and it should be so administered and construed as fairly and reasonably to accomplish this purpose. If contracts for work and supplies can be arbitrarily let, subject to no inquiry or impeachment, to the highest instead of the lowest bidder, under such a provision as is found in this charter, and substantially in the charters of all the other cities of the state, then the provision can always be nullified and will serve no useful purpose. If there were nothing in this record showing that the relator was not the lowest responsible bidder, it would have to be assumed that he was, and that the members of the common council had discharged their duty and had so determined. But here it appears that the relator's bid was next to the highest, and that there was no question or objection at any time that the lower bids were not formal and regular and made by responsible persons. It appears beyond doubt or cavil that the common council arbitrarily rejected the lower bids and accepted the relator's. That under such circumstances the relator's contract was illegal and void, and that he cannot recover for his work is settled beyond controversy by the authorities in this state. (*Brady* v. *Mayor, etc.*, 20 N. Y. 312; *McDonald* v. *Mayor, etc.*, 68 id. 23; *Dickinson* v. *City of Poughkeepsie*, 75 id. 65.)

The claim is made on behalf of the relator that there is a conclusive presumption that the common council adjudicated that his bid was that of the lowest responsible bidder. If this claim be well founded, then provisions like that above quoted from the city charter are of little use, and they can always be effectually disregarded and violated. It is true that the common council, where there are several bidders, have jurisdiction to determine who is the lowest responsible bidder. But in

order to give its action any legal effect, it must exercise its jurisdiction and make a determination based upon some facts. If it refuses to accept the lowest bid for work or supplies, there must be some facts tending to show that it is not that of a responsible bidder, or there must be, at least, some pretense to that effect. An arbitrary determination by such a body to accept the highest bid without any facts justifying it, cannot have the effect of a judicial determination, and must be denounced as a palpable violation of law. The case of the *East River Gas Light Co.* v. *Donnelly* (93 N. Y. 557), does not uphold the relator's contention. It was there held that the common council acted judicially in determining which of several bids it would accept, and that the members thereof could not be made liable in a civil action brought by a party who claimed that he was the lowest responsible bidder, to recover damages because his bid was not accepted. The plaintiff in that case was defeated by the application of the rule of the absolute immunity of judicial officers from responsibility in a civil or criminal prosecution for their action, however erroneous or even malicious. But that rule of immunity is applicable only to them, and cannot be properly invoked in favor of one situated like this relator.

Nothing was added to the validity or legality of relator's claim by the audit and allowance thereof by the common council. The claim being fundamentally illegal, the common council had no jurisdiction to audit and allow it, or give it any vitality. (*Board of Supervisors* v. *Ellis*, 59 N. Y. 620 ; *Lyddy* v. *Long Island City*, 104 id. 218.)

We are, therefore, of opinion that the orders of the General and Special Terms should be reversed and the application for a mandamus denied, with costs of the appeal to the General Term and to this court, and $10 costs of the motion.

All concur.

Order reversed.