### BACHIA v. ESTATES OF HAVEMEYER POINT.

### SAME v. PIEPENBRINK.

(Supreme Court, Special Term, Suffolk County.)

1. MUNICIPAL CORPORATIONS (§ 993*)—TAXPAYERS' ACTIONS—RIGHT TO MAINTAIN.

A taxpayer of a town has no common-law right to sue for relief against a lease made by the town on the ground of its invalidity.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2158–2161; Dec. Dig. § 993.*]

2. PLEADING (§ 63*)—STATUTORY REMEDIES.

One suing under a statute must plead every fact bringing his case within it.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 10, 133; Dec. Dig. § 63.*]

3. MUNICIPAL CORPORATIONS (§ 1000*)—TAXPAYERS' ACTIONS—PARTIES.

A town is a necessary party to a taxpayer's action to cancel a lease made by it and claimed by plaintiff to be invalid.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2167–2172, 2198; Dec. Dig. § 1000.*]

4. MUNICIPAL CORPORATIONS (§ 225*)—PROPERTY—POWER TO LEASE.

If trustees chosen to hold town property not devoted to public use were empowered to manage and control the property to produce an income, they were authorized to make leases for a reasonable time, which might extend beyond the term of their office.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 626–641, 643; Dec. Dig. § 225.*]

5. EVIDENCE (§ 7*)—JUDICIAL NOTICE—NATURE OF PARTICULAR LAND.

The Supreme Court of Suffolk county, N. Y., can take judicial notice that certain land situate in the Great South Bay consists of beach sand upon which nothing grows, except a species of practically valueless beach grass.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 6; Dec. Dig. § 7.*]

6. MUNICIPAL CORPORATIONS (§ 1000*)—TAXPAYERS' ACTIONS—COMPLAINT—SUFFICIENCY.

A taxpayer's complaint to cancel a lease of town property made by trustees is insufficient, where it fails to show that the trustees acted improvidently, fraudulently, for an inadequate consideration, or in excess of their powers.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2167–2172, 2198; Dec. Dig. § 1000.*]

Actions by Richard A. Bachia against Estates of Havemeyer Point and against Clarence Piepenbrink. On demurrers to the complaints. Demurrers sustained.

Henry A. Rubino, for plaintiff.

Parker, Hatch & Sheehan, for defendant Piepenbrink.

Fred Ingraham, for defendant Estates of Havemeyer Point.

JAYCOX, J. [1] These purport to be taxpayers' actions. The plaintiff, however, does not bring himself either within the provisions of section 1925 of the Code of Civil Procedure, or of the General

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Municipal Law (Consol. Laws 1909, c. 24) §§ 50–55. A taxpayer has no common-law right to bring an action of this character. The first act which empowered a taxpayer to bring such an action to prevent waste or restrain illegal action upon the part of a public official was passed in 1872 (Laws 1872, c. 161). Previous to the passage of that act, a taxpayer could not bring an action to restrain or redress the wrongful application of property by a public officer. Roosevelt v. Draper, 23 N. Y. 318; Latham v. Richards, 15 Hun, 129; Queens County Water Co. v. Monroe, 83 App. Div. 107, 82 N. Y. Supp. 610. That act was passed to remedy the felt defect in the law, and give the taxpayer a concurrent action with the corporation for the prevention or correction of the wrongs mentioned in the act. Ayers v. Lawrence, 59 N. Y. 192, at page 196. In one of his reply briefs the plaintiff frankly admits that section 1925 of the Code of Civil Procedure and the provisions of the General Municipal Law above cited do not apply. He, however, points out no statute other than these authorizing the action. He calls attention to no decision which holds that an action may be brought other than under the provisions of the Code or General Municipal Law above referred to by a taxpayer. In one of his reply briefs he seems to intimate that authority for the action may be found in People ex rel. Swan v. Doxsee, 136 App. Div. 400, 120 N. Y. Supp. 962, but that case is not at all analogous to this. That was a mandamus proceeding brought by a resident of the state of New York to compel public officers to perform their duties as such, and it was not essential that the relator should be a taxpayer. It was merely necessary that he should be interested in seeing that the duties were performed. There is but little analogy between a mandamus proceeding and an action in equity. The mandamus proceeding is more closely allied to a criminal prosecution. The position of the relator resembles more the position of the complaining witness in a criminal proceeding than it does that of a plaintiff in an equitable action.

[2] The plaintiff not having alleged the necessary facts to authorize him to bring a taxpayer's action, the demurrer must be sustained upon that ground. A person seeking to maintain an action under a statute must state every fact bringing the case within the statute, so as to enable the court to judge whether or not he has a cause of action thereunder. Rosenstock v. City of New York, 97 App. Div. 337, 89 N. Y. Supp. 948; Reining v. City of Buffalo, 102 N. Y. 308, 6 N. E. 792; MacMullen v. City of Middletown, 187 N. Y. 37, 79 N. E. 863, 11 L. R. A. (N. S.) 391; Winter v. City of Niagara Falls, 190 N. Y. 198, 82 N. E. 1101, 123 Am. St. Rep. 540, 13 Ann. Cas. 486.

[3] There is a further defect of parties to the action. The town of Islip is, upon the face of the papers, the owner in fee of the premises mentioned in the lease, to cancel which these actions are brought. The Court of Appeals in discussing a complaint in a similar action said:

"The city of New York, as successor in interest of the town of Jamaica, the original lessor, is properly made a party because it is entitled to be heard upon the question whether said leases shall be set aside or not." Wenk v. City of New York, 171 N. Y. 607, at page 615, 64 N. E. 509.

I think this is exactly applicable to this case. The town of Islip is entitled to decide and be heard upon the question as to whether it desires these leases set aside or not. It may well be that the leases are so advantageous to the town that it would desire to ratify and confirm them and retain the benefits thereof, but, aside from that, there is, as I understand it, no authority for bringing such an action against the lessee alone. Alvord v. Syracuse Sav. Bk. et al., 34 Hun, 143, affirmed in 98 N. Y. 599; Osterhoudt v. Bd. of Supervisors of the County of Ulster, 98 N. Y. 239; Bush v. Coler, 60 App. Div. 47–49, 69 N. Y. Supp. 684; Eames v. Kellar, 102 App. Div. 207, 92 N. Y. Supp. 665. The last case cited is, it seems to me, conclusive upon the question. It is there said:

"A complete determination of this action without the presence of the city of Watertown as a party is impossible; and, while it may be said that the performance of a contract in which a member of the common council is interested is illegal, and therefore must be a waste of public funds, yet even this question cannot be conclusively determined until the city has a right to be heard"—citing Wenk v. City of New York, 171 N. Y. 607, 64 N. E. 509.

[4-6] I am further of the opinion that the complaint does not state facts sufficient to constitute a cause of action. It merely recites the cession of the property to the town of Islip by the town of Huntington; a statute of the state of New York, ceding any interest it might have in the property, and providing for the election at the annual town meetings of the town of three trustees to "take charge" of the property; a statute which later provided for the election of these trustees biennially so as to conform to the law in relation to biennial town meetings; the making of the lease; a description of the property; and a declaration that the lease is illegal and void. "A municipality may hold property either in its corporate capacity as an ordinary proprietor or solely for the public use. Whether it can devote any part of its property even temporarily to a private use depends entirely upon the capacity in which it holds title. New York Mail & Newspaper Trans. Co. v. Shea, 30 App. Div. 266 [51 N. Y. Supp. 563]." People ex rel. Swan v. Doxsee, 136 App. Div. 400, at page 403, 120 N. Y. Supp. 962, at page 964. This property apparently was held as private property. At least there is nothing in the complaint to indicate the contrary, and, the complaint purporting to give the source of title and the law in relation thereto, it must be assumed that the property is so held. That being the case, the question arises as to what the duties of these trustees were. Were they merely passive duties to see that this property was not trespassed or encroached upon, or were they vested with some active duties to manage and control this property so that the town would derive some financial benefit therefrom? I am inclined to the latter view. If the duties of the trustees were merely that of conservation, I do not think the Legislature would have created three public officers for that purpose. If the trustees were to manage and control the property for the purpose of producing an income, then it seems to me they would be entitled to make leases for a reasonable time. Whether those leases should extend beyond their terms of office I think would be a question of

discretion depending upon all the circumstances. If this was property that could readily be leased from year to year for the purpose of cultivation or some similar annual use, then I think that it would have been the duty of the trustees to so lease it. But if the property in question had no value for any such purpose, and I think the court can take judicial notice that it has not, being a distinct body of land situate in the Great South Bay, and the court, I think, is entitled to assume that all property of that character consists of beach sand upon which nothing grows except a species of practically valueless beach grass, the only value that such property could have would be for building purposes for summer cottages and similar buildings. Under these circumstances, it would be a question of fact for the court to determine whether the leases were improvident, fraudulent, or for an inadequate consideration. In the absence of an allegation to that effect, the court cannot assume that any of these facts existed. It cannot therefore assume that the trustees in question were without power to make the leases which are the basis of these actions.

The plaintiff relies upon the case of Hendrickson v. City of New York, 160 N. Y. 144, 54 N. E. 680, especially that portion of the opinion which says:

"A complaint properly pleading the execution and delivery of the contract, which annexed a copy, and alleged that it was void under the Greater New York charter, would raise the points of good faith, power, and public policy, as they are really questions of law growing out of the contract on its face and the charter."

The situation there presented was not at all analogous to this. The officers who then attempted to act were officers of a corporation whose legal existence would terminate a few days after they made the contract in question. Active operations under this contract were not to commence until three months after the corporation which made it ceased to exist. I think it is apparent that the question of good faith, power, and public policy were there raised simply by pleading the contract and the charter, but here no such situation exists. The corporation represented will undoubtedly continue to exist for hundreds of years in the future as it has in the past. The only change will be that these trustees will be succeeded by others, authorized to perform the same duties which were then incumbent upon them.

The question, therefore, is as to whether these officers acted in good faith; and under the situation here presented I think the presumption must be that they did until at least there is some allegation to the contrary. In the very case relied upon by plaintiff, it is said that those reasonable and proper contracts made after the charter was enacted where it was not possible to limit their term to the precise time the municipality was to exist will doubtless be approved, citing Wait v. Ray, 67 N. Y. 36. That case is more closely analogous to this. A trustee of a public school district contracted with a teacher for a term extending beyond the term of the trustee, and it was held that where the contract was made in good faith, without fraud or collusion, and for a reasonable period, it was valid and binding upon the district. There being no allegation to the contrary, again I say, this

contract must be assumed to have been made in good faith and without fraud or collusion. The plaintiff insists that by reason of the length of time for which the lease is made this court can hold it prima facie invalid, the contention apparently being that the trustees could not legally make a lease for a term extending beyond their own terms of office, and in support of this proposition the case of N. Weekes et al. v. City of Galveston, 21 Tex. Civ. App. 102, 51 S. W. 544, is cited. This case does not support any such proposition. Nowhere in the opinion is the question of the term of the officers who made the instrument mentioned. Neither is the length of the term referred to in any way as having any bearing upon the primary question decided. That case is decided under the principal above quoted from People ex rel. Swan v. Doxsee. It finds and decides that the property in question was held by the city of Galveston solely for the public use, and that consequently any alienation of it, even temporarily, for a private purpose, was void. The property in question in that action was granted to the city of Galveston by the Legislature of the state, and the Legislature declared in a subsequent act that "said property shall not be subject to attachment, execution, or other judicial process for debt or debts of said city, nor shall said corporation have the power to transfer the title to the same to any person or corporation whatever." The court found and decided that the two Acts of the Legislature, one granting the title, and the other expressing the will and purpose of the Legislature as to the purposes for which granted, should be construed together, "each in connection with the other, constitute the title of the city of Galveston to Pelican Island and Pelican Flats, and under that title the city of Galveston holds the property in trust for the public, and is 'charged by law with the duty of administering the trust through the exercise of its legislative and governmental powers upon the property, as the needs and exigencies of the harbor and port may from time to time demand.".

The plaintiff further cites in support of this contention the position of trustees under a will or deed and claims that such trustees cannot make a lease beyond the duration of their trust, and in support of this position cites Greason v. Keteltas, 17 N. Y. 491. His citation is unfortunate. That case has many expressions in it pointing to the contrary doctrine. I think, however, that his position in relation to such trustees is correct, and is borne out by Weir v. Barker, 104 App. Div. 112, 93 N. Y. Supp. 732, Matter of McCaffrey, 50 Hun, 371, 3 N. Y. Supp. 96, and Matter of City of New York, 81 App. Div. 27, 81 N. Y. Supp. 32. But those cases are not at all analogous to the situation here. The trust here did not terminate. If the power to lease existed under the law by which these trustees are given charge of this property, that power was to continue notwithstanding the termination of the term for which these particular officers were elected. The only change was in the personnel of the trustees, and not in the trust. This being so, I think the trustees were entitled to make leases if made in good faith for a period of time extending beyond their own terms of office. This position finds some support in Schwan v. City

of New York, 173 N. Y. 32, 65 N. E. 774. I am therefore of the opinion that the complaint does not state a cause of action.

The demurrers are therefore sustained, with costs, with leave to plaintiff to plead over within 20 days upon payment of costs.