Submitted on brief September 22, affirmed October 23, 1925.

## HERALD PUBLISHING COMPANY *v.* KLAMATH FALLS PUBLISHING COMPANY ET AL.

### (240 Pac. 244.)

**Pleading—Construction of Instrument Set Out by Pleader is for Court,· Unaffected by Pleader's Conclusion.**

1. When pleader sets out instrument on which he relies, its construction is for the court, and he gains nothing by adding thereto his opinion of the legal effect of the document.

**Municipal Corporations — Complaint in Suit to Enjoin Officers from Awarding Contract for Printing Held Demurrable.**

2. In suit to enjoin city officers from entering into contract for city printing on ground that plaintiff's bid therefor was the lowest, complaint *held* demurrable, where there was no mention of necessary data to enable court to determine whether in fact plaintiff's bid for such printing was lower than that of defendant.

**Municipal Corporations—Validity of Contract for Printing not Adjudicated Without City as Party.**

3. In suit to enjoin city officers from entering into contract for city printing, validity of contract cannot be adjudicated without city, as a real party in interest, being brought under jurisdiction of the court.

From Klamath: A. L. LEAVITT, Judge.

In Banc.

AFFIRMED.

---

3.  See 14 R. C. L. 327.

For appellant there was a brief over the name of *Messrs. O'Neill & Irwin.*

For respondents there was a brief over the names of *Mr. C. F. Stone* and *Mr. J. H. Carnahan.*

BURNETT, J.—By this suit the plaintiff seeks to enjoin the city officers of Klamath Falls and the Klamath News Publishing Company from entering into a contract for the city printing or, if such an agreement has been executed, to prevent any performance thereof. Reduced to its lowest terms, the complaint recites the official capacity of the defendants, the corporate character of the publishing companies, plaintiff and defendant, and certain excerpts from the charter of the city together with a copy of the notice given by the police judge, under the direction of the council, calling for bids for the city printing and the publication of legal notices for the year ending December 31, 1925. The complaint says:

"That the plaintiff submitted its bid for said official advertising for said city to be printed in said Evening Herald for the year ending December 31, 1925; and therein said bid proposed to print and publish all headings and subject matter for each insertion at the rate and price of five cents per line 13 ems 8 point for said advertising.

"That the defendant Klamath News Publishing Company made its bid for said official advertising to be published in the said Klamath News at the price and rate of ten cents for each headline for each insertion and for the subject matter five cents per line to four insertions, and for all subsequent insertions at the price of four and one half cents per line for each insertion for the subject matter, the additional sum of ten cents for each headline

for each insertion, of said subject matter and head-lines contained in all official advertising matter for said city.

"That said bid of the plaintiff was and is the less price and lowest bid for said advertising in money values than the bid of the defendant, Klamath News Publishing Company, for like services for said official advertising for said city."

After this, with a tautological rehearsal of the proceedings of the council thereafter, the plaintiff informs us that the council rejected its bid and undertook to pass an ordinance directing a contract to be made with the defendant publishing company. The charter requires that:

"All contracts for official advertising shall be let by the council to the lowest responsible bidder publishing a daily newspaper in the city of Klamath Falls and which has a *bona fide* circulation therein, Providing, however, that the council shall reserve the right to determine such circulation and reject any and all bids."

A further provision is as follows:

"The City of Klamath Falls, is not bound by any contract or in any way liable thereon, unless the same is authorized by a City Ordinance, and any contract so authorized must be in writing, and be signed by the Mayor in behalf of the City, and sealed with the seal of the City and be attested by the police Judge. But an ordinance may authorize the Mayor of the City, to bind the City without a contract in writing for the payment of any sum of money not exceeding One Hundred Dollars."

The defendants demurred to the complaint on the ground that the City of Klamath Falls was a necessary party and that the complaint did not state facts sufficient to constitute a cause of suit, and the demurrer was sustained. Whereupon, the

plaintiff, standing upon its complaint, the suit was dismissed, and the plaintiff appeals.

1. Substantially, the plaintiff has pleaded its grievance according to what it conceives to be the legal effect of the bids, by saying that its bid was the lowest, coupled with a statement of the two bids according to their tenor. The pleading must be judged according to the latter feature, for when the pleader sets out the instrument upon which he relies, its construction is for the court and he gains nothing by adding thereto his opinion of the legal effect of the document. By analogy it is like a complaint pleading a promissory note according to its legal effect and adding an exhibit as a part of the pleading which consists of a copy of a bond of indemnity conditioned that it would be void in case the obligor performs certain acts. The declaration would be treated then as an action upon a bond and not on a promissory note. So here we have a conclusion, but it is for the court to ignore the conclusion reached by the pleader that its own bid was the cheapest and consider the issue on the bids as stated. In order for the court to determine which bid was in fact the lowest, we must be able to refer them to a common standard for comparison.

2. We note that the plaintiff's bid was five cents per line, of a certain length of line and size of type, for the constant price of five cents per line, whether of heading or subject matter. The bid of the defendant publishing company does not include the length of line nor size of type, and it makes a differential in the rates, bidding five cents per line for four insertions of subject matter and thereafter for

four and one-half cents per line for each insertion, and charging the constant rate of ten cents for each headline. Neither bid takes any account of the number of publications to be contracted for. Applying the rates to an example of a one line heading and twenty line subject matter, of the size of type and length of line mentioned in the plaintiff's bid, the price for four insertions would be twenty cents greater on the defendant's bid than that of the plaintiff's; but for eight insertions the charge of the defendant amounts to the same as that of the plaintiff and will continually be less thereafter for any number of insertions, while that of the plaintiff will continue at the fixed rate specified in its bid. This leaves out of the consideration a possible difference of length of line and size of type for the bid of the defendant. For aught that appears, the charge for the publication in the defendant's paper, considering length of line and size of type, which are not disclosed, would figure out at a less amount in all cases than that of the plaintiff. In other words, in order to determine the ultimate fact of which is the lowest bid the complaint should allege all the conditions necessarily entering into each bid so that the court could draw the conclusion about which was in fact the least expensive for the service rendered.

The plaintiff counts upon the veto message of the mayor disapproving of the ordinance awarding the contract to the defendants, wherein he recites that he had a computation made by some accountants rechecking the printing of the years 1923 and 1924, which produced a result favorable to the plaintiff. This is pleading what would be the rankest kind of hearsay testimony. It amounts to saying that the

mayor told the council that the accountants told him what happened on an entirely different occasion. It could not be evidence under any view of the case.

The complaint is equivalent to propounding the question, Which is the cheapest, five hogs or seven sheep? The principle is that there is no mention of certain necessary data to enable the court to determine whether in fact the plaintiff's bid was lower than that of the defendant.

3. Besides this, the validity of the contract cannot be rightly adjudicated without the city, as a real party in interest, being brought under the jurisdiction of the court. The Circuit Court was right in sustaining the demurrer to the complaint and the decree should be affirmed. It is so ordered.

AFFIRMED.

McBRIDE, C. J., and RAND and BROWN, JJ., concur.

BELT, J., Specially Concurring.—In my opinion the City of Klamath Falls is an indispensable party to this suit. It is vitally interested in the contract and cannot be divested of its rights therein without an opportunity to have had its day in court. The fact that plaintiff alleges the contract to be illegal does not alter the rule. Has not the city a right to be heard as to whether it is entering into an alleged illegal contract? Indeed, it is presumed that municipalities, as well as individuals, are fair and honest in business transactions.

The rule is thus stated in 32 C. J. 298:

''Where the property rights or interest of a municipal corporation will be affected in case the injunction asked for is granted, it is generally held that it, as well as the particular officer or officers sought to be enjoined, should be made a party

or parties. However, the municipality is not an indispensable party where there is no attempt to divest it of a right or to impose an obligation upon it.''

*Basham* v. *Holcombe* (Tex. Civ. App.), 240 S. W. 691, was a suit to enjoin the execution of a contract by the city for public improvements, for the reason that the city officials did not accept the lowest bid. The court held:

"Although the suit was an effort to restrain the officials of the city from making a contract on its behalf with, and from paying out its money to, a designated person, neither the city itself nor the person affected were made parties, as has been before stated. Under well-settled authority, both were necessary parties to a proceeding so directly and vitally affecting their interests"—citing many authorities.

In *Allison et al.* v. *Ellis et al.* (Tex. Civ. App.), 248 S. W. 814, it was contended, as here, that a municipality was not a necessary party in a suit to enjoin the execution of an alleged invalid contract; but the court said:

"It cannot with any degree of sound reasoning be contended that the county will not be affected by the decree rendered in this case, whether it be to sustain the acts of its officers and agents or to annul them. Neither can a want of necessary parties be disregarded on an assumption that the allegations of the petition show an invalid contract by which the county is not bound. The demands for the necessary parties in a court of equity cannot be met in any such way. The county has the right to be in at the death of a contract to which its officers have bound it. Its interests cannot be determined in a suit to which it is not a party.''

*Eames* v. *Kellar et al.*, 102 App. Div. 207 (92 N. Y. Supp. 665), was a proceeding to restrain the performance of a contract made in behalf of the City of New York for the reason that certain aldermen were interested in the same. The city was not made a party. The court thus spoke:

"A complete determination of this action without the presence of the city of Watertown as a party is impossible; and while it may be said that the performance of a contract in which a member of the common council is interested is illegal, and therefore must be a waste of public funds, yet even this question cannot be conclusively determined until the city has a right to be heard"—citing *Wenk* v. *City of New York*, 171 N. Y. 607 (64 N. E. 509).

This ruling was adhered to in the more recent case of *Bachia* v. *Estates of Havemeyer Point*, 77 Misc. Rep. 362 (136 N. Y. Supp. 435).

Also in support of the conclusion herein reached, see: *Renshaw* v. *Arnett* (Tex. Civ. App.), 158 S. W. 1197; *Gillespie* v. *Gibbs*, 147 Ala. 449 (41 South. 868); *Moore* v. *Held et al.*, 73 Iowa, 538 (35 N. W. 623); *Turner et al.* v. *Cruzen et al.*, 70 Iowa, 202 (30 N. W. 483); *Bradley* v. *Gilbert*, 155 Ill. 154 (39 N. E. 593).

It is argued that many of the cases cited involved executed contracts and that the law therein announced has no application where relief is sought to restrain the city from entering into an illegal contract. If it be conceded that the city would be an indispensable party in a proceeding involving an executed contract, it would seem that it is entitled to be heard on the question of the right so to contract.

From the complaint it appears uncertain whether the contract has been executed:

" * * proceeding to make and enter into said contract, in violation of the said city charter, with the defendant Klamath News Publishing Company, as the defendant now threaten. and will do, or that if the defendants have made and entered into said contract, then and in that event that they be restrained from proceeding thereunder in the behalf of said city."

In the prayer of the complaint it is asked:

"That a restraining order, or an injunction, issue restraining the defendants as prayed in the complaint herein, that if such contract has been executed, to prevent any performance thereof, of is (or if) the said contract has not been executed, to restrain the defendants from its execution."

When tested by demurrer the pleading is construed more strictly against the pleader. What if the contract had been executed? Would it be contended that the city, being a party thereto, could be divested of its rights in such manner? The plaintiff should specifically state its theory. If after the commencement of the suit it appeared that the contract had been executed, such fact should have been alleged in a supplemental complaint.

We are not concerned with the question of bringing in new parties after a cause is at issue on the merits, but we are called upon to decide whether the court was right in sustaining the demurrer to the complaint.

The complaint was challenged by demurrer on the ground, among others, that there was a defect in parties defendant in that the City of Klamath Falls was not joined as such. The respondent should have profited thereby instead of standing on the bill. Aside from the question as to whether the complaint stated facts sufficient to constitute a cause of suit, the trial court was right in sustaining the

demurrer for the reasons above stated, and its decree should be affirmed.

COSHOW, J., Dissenting.—This is a suit instituted by the plaintiff to enjoin the defendants from entering into a contract between the defendants Klamath News Publishing Company and the defendant F. R. Goddard et al., as officials of the City of Klamath Falls. The proposed contract was for the publication of legal notices required to be advertised by the charter and ordinances of said city. The charter of said city, Section 72, Article I, Chapter III, provides:

"All contracts for official advertising shall be let by the council to the lowest responsible bidder publishing a daily newspaper in the City of Klamath Falls and which has a *bona fide* circulation therein, Providing however that the council shall reserve the right to determine such circulation and reject any and all bids."

Section 6 of said charter provides:

"The City of Klamath Falls, is not bound by any contract or in any way liable thereon, unless the same is authorized by a City Ordinance, and any contract so authorized must be in writing, and be signed by the Mayor in behalf of the City, and sealed with the seal of the City and be attested by the Police Judge. But an ordinance may authorize the Mayor of the City, to bind the City without a contract in writing for the payment of any sum of money not exceeding One Hundred Dollars."

Section 77 of said charter provides:

"That, Every Ordinance shall be read (3) times and can be read the Second time by Title only, but no ordinance shall be passed by the council on the day of its introduction, nor within five (5) days

thereafter, nor at any other time than at a regular meeting.''

Section 66 of said Charter provides:

''The power and authority given to the Council by this Charter can be exercised only by Ordinance or Resolution, except as otherwise herein provided.''

Pursuant to said Section 72 the police judge of said city duly advertised for sealed proposals for the official advertising of said city during the year 1925. In response to the said invitation the plaintiff submitted its bid alleged in the complaint as follows:

''Said bid proposed to print and publish all Headings and subject matter for each insertion at the rate and price of Five Cents Per Line 13 ems 8 point for said Advertising.''

The defendant the Klamath News Publishing Company made its bid for said official advertising alleged in the complaint as follows:

''At the price and rate of Ten Cents for each Head Line for each insertion and for the subject matter five cents per line to four insertions, and for all subsequent insertions at the price of four and one-half cents per line for each insertion for the subject matter, the additional sum of Ten Cents for each Head Line for each insertion, of said subject matter and Head Lines contained in all official advertising matter for said city.''

The complaint further alleges as follows:

''That, said Bid of the plaintiff was and is the less price and the lowest Bid for said advertising in money values than the Bid of the defendant Klamath News Publishing Company for like services for said official advertising for said city.''

That only two bids were received and that the defendants composing the city council of said city

refused to let said contract to the lower bidder and awarded said contract to the higher bidder; that said common council at the time of letting the contract did not pass any ordinance but merely passed a motion awarding the contract to the "Klamath News" and directing the police judge and mayor with the aid of the city attorney to enter into a contract with the defendant Klamath News Publishing Company. The complaint further alleges:

"That, the said Councilmen in control of said Council before and at said session of said Council acting in concert together under the influence of partisans, favoritism and to secure political advantages for and towards the defendant Klamath News Publishing Company and political opponents of and holding a dislike for the management. and public municipal policies espoused and advocated in the columns of the said Daily Evening Herald by the plaintiff relative to the acts, doings and course pursued by said Councilmen in their official capacity as such officers for said city; that said Councilmen in control of the business of said Council in the disregard of their said duty, in bad faith unfairly formed, and held a fixed determination, to resist, frustrate and defeat the plaintiff from procuring said contract for said official advertising upon the plaintiff's said lowest bid or any bid therefor, and let and award said contract to the defendant Klamath News Publishing Company, the highest bidder therefor.

"That, said Councilmen, did not at any time or at all enter into a·course and pursue due exercise of the use of a fair impartial investigation, comparison and inspection of said bids and proposals, to ascertain and acquire any knowledge of facts upon which to base and found a determination that tend to pecuniary responsibility, skill, integrity, capacity and judgment, as well as, the circulation of the said Evening Herald and Klamath News, the bids of the

plaintiff and that of the defendant Klamath News Publishing Company, and did not find any facts tending to disclose the cause, reasons and matters of fact, that moved and caused said Common Council to accept the highest bid for said official advertising and to reject the lowest bid made by this plaintiff therefor submitted to said Council, in violation of the terms of said Charter to award said contract to the lowest responsible bidder and ordering said Mayor and Police Judge to execute said contract with the defendant Klamath News Publishing Company.''

It is alleged in the complaint that thereafter and after the commencement of this suit the defendants in their capacity as councilmen of said city passed an ordinance attempting to award said contract for official advertising to the defendant Klamath News Publishing Company; that thereafter the mayor of said city duly vetoed said ordinance, stating his reasons for such veto to be that the bid of plaintiff was the lower.

It is alleged that said ordinance was not re-enacted or passed over the mayor's veto.

It is further alleged in the complaint that the defendants composing the common council later passed another ordinance of the same purport as Ordinance No. 651, vetoed as stated, and awarded the contract to the defendant Klamath News Publishing Company; that said ordinance was introduced and passed on the same day at one session of the common council; that the last-named ordinance was also vetoed by the mayor for the same reasons as Ordinance No. 651 was vetoed; that the later ordinance was thereupon passed over the veto of the mayor; that the plaintiff is the owner of a large printing plant and was fully equipped to publish all adver-

tising for said city; that the plaintiff is the owner of a large amount of real and personal property within the limits of said city and is a substantial taxpayer.

To this complaint the defendant Klamath News Publishing Company filed a demurrer on the ground that said complaint does not state facts sufficient to constitute a suit. The other defendants appeared together and filed a demurrer based upon three grounds, to wit: First, that the City of Klamath Falls was an indispensable party and was not a party defendant; second, that the complaint did not state facts sufficient to constitute a cause of action or suit; third, that the plaintiff had joined in said complaint a suit as taxpayer and one as and for itself relating wholly to the said printing company and that said causes of suit had been and are improperly united in violation of Subsection 5, Section 68, Or. L. Both demurrers were sustained. A judgment was entered dismissing the suit and awarding costs to the defendants. From this judgment the plaintiff appeals.

The prayer of the complaint is for a restraining order restraining the defendants from executing the contract for the official advertising for the city or, if the contract had been entered into, to prevent any performance of same.

Two questions are presented by the appeal, namely: First, is the City of Klamath Falls an indispensable party to the suit; second, does the complaint state facts sufficient to constitute a suit against the defendants.

The city is a proper but not an indispensable party to this suit. The object of the plaintiff measured by the prayer of its complaint is to enjoin the city officials from entering into an illegal con-

tract. The motion passed by the city council directed the mayor and police judge of the city to execute the contract with the defendant The Klamath News Publishing Company.

"One who has, or claims, an interest in the controversy adverse to the plaintiff, is a necessary party; while one whose presence is requisite only to a full determination of the questions involved, is a proper party." Phillips on Code Pleadings, 481, § 453; Shipman on Equity Pleadings, 55, 56.

"Third, where he is not interested in the controversy between the immediate litigants, but has an interest in the subject matter which may be conveniently settled by the suit, and thereby prevent further litigation, he may be a party or not, at the option of the complainant." Bliss on Code Pleading (156), § 96; Maxwell, Code Pleading, 24, 25.

The controversy between the litigants can be determined without the presence of the city. In the stage of the litigation presented by this appeal no rights of the city are challenged. It cannot be said that the city is interested in becoming a party to an illegal or void contract. If interested at all it would seem to be *in favor* of the plaintiff, rather than adverse.

"Whether there has been a proper joinder of parties defendant depends largely upon the case as stated by plaintiff in his complaint, however it may turn out upon the merits." *Sweeney* v. *Jackson County*, 93 Or. 96 (178 Pac. 365, 182 Pac. 380).

"Who are proper or necessary parties to an action by or against a municipal corporation generally depends upon the nature of the action, the relief sought, and the charter or statutory provisions applicable." 5 McQuillin, Munic. Corp. 5173, § 2494."

Keeping in mind that when this suit was instituted no ordinance had been passed authorizing the execution of the proposed contract; that the contract could not be legally executed without such ordinance; that the facts alleged in the complaint relate to the time the complaint was filed,—we are constrained that the city is not interested in this litigation except to prevent the execution of the alleged illegal contract in common with the plaintiff. The Supreme Court of Nebraska has correctly stated the law applicable as follows:

"If the authorities of Wymore are threatening to do an illegal act obviously beyond the scope and limit of their agency, the injunction must go against them and not against the City." *Wabaska Electric Co.* v. *City of Wymore*, 60 Neb. 199, 203 (82 N. W. 626, 627).

In the instant case an injunction preventing the mayor and police judge from executing the alleged illegal contract, or denying that remedy, will as completely determine the merits of the controversy as though the city was a party.

"Where an ordinance threatened to be adopted by a mayor and council is prejudicial to the rights of an individual, injunction may issue against the officers, but not against the city; its enforcement will be enjoined if it is invalid, if private rights are invaded." 2 Smith on Mod. Mun. Corp., § 1624.

The authorities are apparently in conflict on this question. Texas is the only state holding directly contrary to the view herein expressed. The cases cited to support its view upon examination are found to involve cases where the contract had been executed in behalf of the city, or the city held property in its name directly involved in the litigation, or the city was otherwise directly involved in the

identical thing litigated: *Basham* v. *Holcombe* (Tex. Civ.), 240 S. W. 691, 693.

Because of a divergence of opinion it would have been better to have made the city a party defendant. The city being under the control of defendants would not become a party plaintiff. To have made the city a party would have avoided the needless and wasteful controversy about a formal matter.

We cannot indulge a presumption that the mayor has executed the proposed contract since the commencement of this suit. It was his duty not to execute. The complaint discloses that by a comparison of the two bids he ascertained the plaintiff's to be the lower bid. *People ex rel. Coughlin* v. *Gleason,* 121 N. Y. 631 (25 N. E. 4, 5). The presumption is that the mayor did his official duty by refusing to execute the illegal contract: Or. L., § 799, subd. 15.

If it develops with the progress of the trial that the city should be made a party it will be the duty of the court to order it brought in: Or. L., § 41.

"Where public officers are acting illegally or without authority and in breach of trust and are causing irreparable injury or a multiplicity of actions at law, they will be enjoined." 22 Cyc. 879 E. "Equity has jurisdiction to prevent public officers and boards from letting or carrying out unauthorized and illegal contracts for public buildings, bridges, and other improvements, when such action may cause the levy of illegal taxes, the expenditure of public funds in an improper manner, or a complication of a public business that will bring about many actions at law." 22 Cyc. 693, Sec. 3. "Where the statute requires a contract to be let to the lowest bidder, the letting of it to one not the lowest bidder will be enjoined": 22 Cyc. 894 D; 32 C. J. 240, Sec. (383) F, 243, Sec. (385) c; 263, Sec. (412), Note 47, 264, Sec. (415) 6; 267, Sec. (420) b; 3 McQuillin,

Mun. Corp., Secs. 1223–1227. "But they may not arbitrarily refuse to accept the lowest bid without any facts tending to show that it is not that of a responsible bidder.   Any arbitrary determination to accept the highest bid, without facts justifying it, cannot have the effect of a judicial determination." Donnelly, Public Contracts, Sec. 122, p. 801; 2 High on Inj. (4 ed.), Secs. 1308–1310; 1 Smith, Modern L. of Munic. Corp., Sec. 671.

The complaint states further facts showing that the bid of the Herald Publishing Company was the lower bid; it sets out in substance the two bids made. This is followed by a positive allegation that the bid of the Herald Publishing Company is the lower bid.   Other facts are alleged in the complaint either directly averring the bid of the Herald Publishing Company to be lower or that of the Klamath News Publishing Company to be higher.   The complaint alleges that the plaintiff is the owner of "the 'Evening Herald,' a daily newspaper that has been published in said city for 19 years; that said paper is printed, published and circulated in the said city, and has a larger circulation therein than any other newspaper," and that in equipment, capacity and pecuniary ability is "able to perform a contract to print, publish and circulate to the largest number of subscribers in said city the said official advertising in said city."   It is also alleged in effect that the council did not exercise its discretion reserved to it in the charter "to determine such circulation and reject any and all bids."

It was not necessary to set out in the complaint the evidence necessary to prove the allegation that plaintiff's bid was lower than the other bid.   No motion was made to require the plaintiff to make the complaint more definite and certain.   The court

will not try issues of fact upon a demurrer. Which of the two bids is the lower must be determined from an examination of the evidence. The allegation that plaintiff's bid is lower is not a conclusion of law, but a statement of fact. Whether or not that statement is true cannot be determined upon a demurrer, but must await the evidence. The bids are not set out in full, but only the effect. Whether or not the plaintiff's bid is the lower depends on the number of insertion, style of type employed and width of column used. These matters are all evidentiary. By demurring the defendants admit the allegations of fact including the averment that plaintiff's was the lower. The allegation regarding the bids should have been more definite and specific, but since no motion to strike was made, and in view of the allegations showing gross violations of provisions of the charter, the complaint is not fatally deficient. It is alleged that the council made no examination so as to determine the circulation or the relative price of the two bids; that the ordinance directing the execution of the contract was introduced and passed on the same day.

The complaint sets out the message of the mayor vetoing the ordinance, awarding the contract to the defendant Klamath News Publishing Company. The message is not plaintiff's statement of any fact. It could not be used as evidence. It is hearsay. No motion was made to strike it or other evidentiary matter embodied in the complaint. The message neither adds to nor detracts from the complaint except to display the grossest violation of the rules of pleading, manifest very generally in the complaint.

The fact that the mayor vetoed the ordinance precludes the inference that a contract has been entered into between the city and the defendant Klamath News Publishing Company.  He may have refused to sign the contract as did the mayor in *People ex rel. Coughlin* v. *Gleason,* 121 N. Y. 631 (25 N. E. 4, 5), where the court says:

"It is true that the common council, where there are several bidders, have jurisdiction to determine who is the lowest responsible bidder; but in order to give its action any legal effect it must exercise its jurisdiction, and make a determination based upon some facts.  If it refuses to accept the lowest bid for work or supplies, there must be some facts tending to show that it is not that of a responsible bidder, or there must be at least some pretense to that effect.  An arbitrary determination by such a body to accept the highest bid, without any facts justifying it, cannot have the effect ·of a judicial determination, and must be denounced as a palpable violation of law."

The complaint alleges that the ordinance directing the mayor and police judge to execute the contract was introduced and passed on the same day.  This is clearly in violation of the mandatory provision of the charter prohibiting passing an ordinance on the day of its introduction, or within five days thereafter, or at any other time than at a regular meeting.  Mr. Justice RAND expressed the principle applicable thus: "In this state the law is settled by an unbroken line of decisions that a compliance with the provisions of a charter such as this must be had before liability will attach against the city, or the city be bound by any contract not made in compliance with the provisions of the charter."  (Many authorities are cited.)  *State ex rel.*

v. *Funk,* 105 Or. 134, 156, 157 (199 Pac. 592, 209 Pac. 113, 25 A. L. R. 625).

The other formal and necessary averments are embodied in the complaint. The complaint therefore states a cause of suit against the defendants.

The courts will not interfere with the acts of a municipal corporation or other public bodies or officers in the exercise of their functions where they are called upon to exercise discretion or judgment in the absence of proper allegations of fraud: *DeNeffe* v. *Duby et al.* (Or.), 239 Pac. 109, decided September 15, 1925. If the facts in this case required of the common council, the defendants herein, the exercise of discretion as to the choice of material or other matter that required investigation so that the court could not upon the face of pleading say which one of the two bidders was the lower, it would refuse to interfere; but in this case no choice of material is required, alternative proposals were not invited. Both bids were for the same service. The only discretion given the council is to determine the circulation, and the relation of the bids as to price. The complaint negatives any claim on the part of the defendants that the lower bidder is not responsible. If in the face of these facts the common council can ignore the plain provisions of the city charter and award the contract to the higher bidder, the taxpayers of the city are without remedy. The provision in the charter requiring the contract for the official advertisements of 'the city to be let to the lowest responsible bidder was intended to protect the taxpayers of the city against exorbitant charges. The common council is as much under obligation to obey the provision of the charter as any other citizen of the city. The defendants can-

not lawfully let a contract to a higher bidder without showing sufficient reason therefor: *Faist* v. *Mayor etc. of City of Hoboken,* 72 N. J. L. 361 (60 Atl. 1120, 1121); *Chippewa Bridge Co.* v. *City of Durand,* 122 Wis. 85 (99 N. W. 603, 106 Am. St. Rep. 931, 947); *Kelling* v. *Edwards,* 116 Minn. 484 (134 N. W. 221, 222, 38 L. R. A. (N. S.) 668).

There is only one cause of suit stated in the complaint. The fact that the unsuccessful bidder is the plaintiff does not deprive him of the right of a taxpayer to be protected against the unlawful expenditure of public funds raised by taxation and to which he is compelled to contribute: *Chippewa* v. *City of Durand,* above; *Times Publishing Co.* v. *Everett,* 9 Wash. 518 (37 Pac. 695, 43 Am. St. Rep. 865).

Mr. Justice BEAN concurs with this opinion.